# Hodges *v.* Denny.

*Bill in Equity to enforce Vendor's Lien on Land.*

1. *Competency of purchaser to testify as to transactions with deceased vendor.*—In. a suit to enforce a vendor's lien on land, brought by an assignee of the note given for the purchase-money, the purchaser can not (Code, § 2765) testify as to any transactions between himself and the deceased vendor.

2. *Abatement of purchase-money; description of lands in bond or conveyance.*—On a sale of a specific tract of land, which is designated according to the government survey, or described by certain and definite boundaries, natural or artificial metes and bounds, or courses and distances open to observation and not subject to mistake, superadded words stating the quantity are regarded as a part of the description, and not as of the essence of the contract; parol evidence can not be received, in the absence of·fraud, or of gross and palpable mistake, to contradict or vary the writing; nor can the purchaser claim an abatement of the purchase-money, on account of a deficiency in the quantity of the land. But, when the sale is by the acre, and the land is not described by definite and certain boundaries, the statement of the number of acres is of the essence of the contract; the superadded words "more or less," following the description, refer only to a reasonable margin for errors of survey, variations in instruments, or in estimates of the parties; and the purchaser is entitled to an abatement of the purchase-money, if the deficiency exceeds this reasonable allowance.

3. *Same; case at bar.*—On a sale of a tract of land consisting of two parcels, one containing 25 acres, and described by metes and bounds, and the other described as follows: "All of the land lying on the north side of the [public] road, and four acres on the south side of said road, containing in all 82 acres, more or less; said land off of the northwest quarter of the south half of section 13, and a part off of the west end of the south half of section 12;" these words are of the essence of the contract, and not merely descriptive, and the purchaser is entitled to an abatement of the purchase-money, on proof of a deficiency of twenty acres or more in the quantity of the land.

APPEAL from the Chancery Court of Chambers.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on the 14th September, 1886, by William S. Denny, against C. C. Hodges, and against the administrator, children and heirs at law of John C. Pearson, deceased; and sought to enforce a vendor's lien on a tract of land, for the balance of purchase-money unpaid, as evidenced by the two promissory notes of said Hodges, which the complainant held by transfer and assignment from said Pearson. The contract of sale was made on the 27th September, 1883, the agreed price of the land, as stated

in the bond for title, being $1,632; of which sum, $432 was to be paid (and was paid) on the 25th December, 1883, and the two notes held by the complainant were taken for the residue, payable on the 25th December, 1884 and 1885, respectively, to said Pearson or bearer. The land was thus described in said Pearson's bond for title: "A certain tract of land, to-wit: all the land lying on the north side of Denny's Ferry and Rock Mills road, and four acres on the south side of said road, containing in all eighty-two acres, more or less; said land off of the N. W. $\frac{1}{4}$ of the S. $\frac{1}{2}$ of section 13, and a part off of the west end of S. $\frac{1}{2}$ of section 12, in township 24, range 25; and 25 acres, more or less, bounded as follows:" A cross-bill was filed by Hodges, claiming an abatement of the purchase money, on account of an alleged deficiency in the quantity of land. A guardian *ad litem* was appointed for Pearson's children, who filed a formal answer for them; and an answer and disclaimer was filed by his administrator, alleging the insolvency of his estate. The record does not show any ruling by the chancellor on the claim set up in the cross-bill; but, on final hearing on pleadings and proof, he rendered a decree for the complainant for $785.17, as the balance due on his notes, with interest; and this decree is now assigned as error by Hodges, with the chancellor's ruling suppressing his testimony as to the transactions between him and said Pearson connected with the contract.

J. M. & E. M. OLIVER, for appellant, cited *Spence v. Mitchell*, 9 Ala. 744; *Tatum v. Manning*, 9 Ala. 144; *Babcock v. Huntington*, 9 Ala. 869; *Fontaine v. Helton*, 80 Ala. 528; *Rogers v. Peebles*, 72 Ala. 529; *Minge v. Smith*, 1 Ala. 415; *Terrell v. Kirksey*, 14 Ala. 209; *Winston v. Browning*, 61 Ala. 80; *Young v. Craig*, 2 Bibb, 270; *Bell v. Thompson*, 34 Ala. 633.

N. D. DENSON, *contra*, cited Code, § 2765; *Goodlett v. Kelly*, 74 Ala. 213; *Dozier v. Duffie*, 1 Ala. 320; *Frederick v. Youngblood*, 19 Ala. 680; *Wright v. Wright*, 34 Ala. 194; *Winston v. Browning*, 61 Ala. 80; *Broughton v. Mitchell*, 64 Ala. 210; *Pettus v. McKinney*, 74 Ala. 108; *Brown v. Freeman*, 79 Ala. 406; 13 Wall. 379.

CLOPTON, J.—In a suit by a transferree of a promissory note, against the personal representative of the maker, the

[Hodges v. Denny.]

transferror is not a competent witness, on the part of the transferree, as to any transaction with, or statement by the deceased maker. A transfer of the subject-matter of the suit does not operate to take the living party out of the exception to the statute rendering parties competent witnesses. Mutuality in its operation is the policy and purpose of the statute. Its provisions exclude the living from testifying to any transaction between himself and the dead, in all cases where the effect of the evidence is to diminish the rights of the deceased, or those claiming under him, and where the presumption exists, that the dead, if living, could explain, qualify, or contradict. Any other construction of the statute would tend to introduce the corrupting influences in the administration of the law, which it is the design of the exception to prevent. The vendor, who transferred to the complainant the purchase-money notes, having died, the defendant, who is the vendee, comes within the spirit and policy of the statute. The chancellor did not err in excluding his testimony as to transactions and statements between himself and the deceased vendor.—*Boykin v. Smith*, 65 Ala. 294; *Miller v. Cannon*, 84 Ala. 59.

Appellee seeks by the bill to charge a vendor's lien on land sold to defendant by J. C. Pearson. The defendant seeks, by cross-bill, an abatement of the amount agreed to be paid, on account of an alleged deficiency in the quantity of the land, alleging that it was sold, and the gross sum of the purchase-money ascertained, by the price per acre, and that Pearson misrepresented the number of acres. Defendant's right to abatement materially and mainly depends on the interpretation of the contract, as shown by the bond for title—whether the phrase contained therein, stating the number of acres, is merely descriptive, or a distinct averment or stipulation as to the quantity.

Contracts for the sale of land consist generally of two classes—a sale of a specific tract, described by metes and bounds, and a sale of a specified quantity—a sale in gross, and a sale by the acre. When, in a conveyance, the land is described by certain and definite boundaries, in the absence of fraud, or gross and palpable mistake, such description is ordinarily regarded as conclusive; and when followed by a representation of quantity, such representation is considered as cumulative description. As to contracts of the first class, this rule has been placed beyond the pale of further discussion by the decisions of this court. It has been repeatedly

affirmed, that when land is described in a bond or deed by well-defined boundaries, such as by its designation according to the government survey, or by natural or artificial metes and bounds, or courses and distances, open to observation and not subject to mistake, a statement of quantity, following the description, is regarded a part of the description, and not of the essence of the contract. By such sale, both parties take upon themselves the risk as to quantity. The purchaser is entitled to all the land included in the tract specifically described, though greater than the quantity stated, and the vendor is not liable if there be a deficiency. In such case, in the absence of fraud, or gross and palpable mistake, or an omission to truly express the contract, parol proof, varying or contradicting the terms of the conveyance, is inadmissible, even in equity.—*Wright v. Wright,* 34 Ala. 194; *Carter v. Beck,* 40 Ala. 599; *Rogers v. Peebles,* 72 Ala. 529; *Hess v. Cheney,* 83 Ala. 251.

But this rule has no application to contracts of the second class. A different rule governs, when it is apparent from the conveyance that the land is not described by definite and certain boundaries, which furnish the standard of quantity; and the representation of the number of acres is an essential ingredient of the contract, regulating the aggregate sum to be paid. In such case, if there be a material and substantial variance, equity will place the parties in the same relative condition in which they would have stood, had the real quantity been known at the time of the bargain.—*Winston Browning,* 61 Ala. 80; *Harrison v. Talbot,* 2 Dana, 258. Whether the statement of the quantity in a bond or deed shall be regarded as descriptive, or of the essence of the contract, largely depends upon the manner of its use and its connection with other descriptive parts.

The foregoing principles are of easy application to the sale shown by the bond in question. There is an evident misdescription as to the numbers of the sections, and in other respects. But this is immaterial, as it does not, and can not, affect the interpretation of the bond as to the matter under consideration. The land sold consists of two parcels, as to one of which there is no controversy. We shall confine our consideration to the parcel in which it is alleged the deficiency occurs. As to this, the language of the descriptive part of the bond is, "all the land lying on the north side of Denny's Ferry and Rock Mills road, and four acres on the south side of said road, containing in all eighty

[Hodges v. Denny.]

two acres, more or less; said land off of the N. W. $\frac{1}{4}$ of the
S. $\frac{1}{2}$ of section 13, and a part off of the west end of S. $\frac{1}{2}$ of
section 12, in township 24, range 25." It is apparent that
the contract is not a sale of a specific tract, described by
definite and certain boundaries, to which the representation
of the number of acres can be superadded as a part of the
description. By the express terms of the bond, the vendor
sold, and the defendant bought, eighty-two acres more or
less, four of them lying south, and the balance north of the
public road. It constitutes parts of sub-divisions of sections,
the area of which includes more land than the quantity
sold, and no data are furnished, from which to ascertain the
particular part of the sub-divisions. The boundary of nei-
ther side is given; and the only means of determining the
quantity sold is the representation contained in the bond.

Stress, however, is laid on the words, *more or less*, as
qualifying the representation of quantity, and showing that
the parties did not regard it as of the essence of the con-
tract. In *Dozier v. Duffie*, 1 Ala. 320, it is said: "The
words, *more or less*, though not decisive, of themselves, to
show that there was no stipulation by the vendor as to the
quantity, yet, taken in connection with the rest of the deed,
become very expressive of its true meaning." And in *Fred-
erick v. Youngblood*, 19 Ala. 680, it is said: "We think that
the obvious common-sense meaning of the words in the
deed, 'be the same more or less,' is, that the parties should
run the risk of gain or loss, and if the quantity prove greater
or less than the quantity sold, the parties should abide by
their bargain." In each of these cases, the land was
described by its designation according to the government
surveys. Of the effect and meaning of such or equivalent
words, different courts have entertained different views.
We have no hesitation in saying, that when the land is de-
scribed by metes and bounds, as constituting a specific tract,
such description preceding a statement of the quantity, the
words, *more or less*, or equivalent words, qualify and re-
strain the representation of quantity, and show that the par-
ties did not regard the number of acres stated as an essen-
tial ingredient of the contract, but merely descriptive.
When, however, the sale is by the quantity, and not as a
specific tract, the words, *more or less*, do not qualify and
restrain to such an extent. They are ordinarily understood
and intended to meet any small variance in the estimated
and represented quantity, and restrain the representation

"to a reasonable or usual allowance for small errors in surveys, or for variations in instruments," or as estimated by the parties. And if the deficiency be relatively large, equity will allow the purchaser a corresponding abatement of the purchase-money.—*Terrell v. Kirksey*, 14 Ala. 209; *Couse v. Boyles*, 4 N. J. Eq. 214; *Quesnel v. Woodlief*, 2 Hen. & Munf. 173, note.

The bond showing only a sale of a specific quantity of land, it follows from the foregoing principles, that the words, "containing in all eighty-two acres, more or less," is an averment or representation as to quantity, qualified and restrained as we have above stated. Such being the nature of the sale, and of the bond, parol evidence that the sale was in fact by the acre, and that the parties adopted this mode to fix the aggregate price, does not vary or contradict its written terms. It only tends to prove either fraud, or gross and palpable mistake. Both the bond and the parol proof show that by the representation, and in the contemplation of the parties, the quantity of the whole land sold was about one hundred and seven acres. The evidence tends to show that there was a deficiency of about twenty-five acres. We will not say that actual fraud is proved; for it seems that the vendor himself purchased the land as containing the same number of acres, and therefore may have made the representation in good faith. The only living witness, who is competent, and is unimpeached, testifies that the sale was by the acre, and that the vendor represented that there were one hundred and five, or one hundred and eight acres. The defendant had a right to rely, and the reasonable inference is, did rely on this representation. A deficiency so relatively large shows a gross and palpable mistake—so gross and palpable, that equity should compensate the purchaser.—Sugden on Vendors, 382. We are not satisfied with the survey that was made showing the extent of the deficiency; and consequently will remand the cause, that the Chancery Court may, by reference to the register, satisfactorily ascertain the amount which should be deducted, and cause, if deemed necessary, another survey, in order that a correct result may be obtained.

Reversed and remanded.